Good morning, Your Honors. This is Joseph Hong for the Appellant 9060 Boston Springs Trust. You may proceed. Yes, Your Honor. May it please the Court. I believe the order prior to this hearing wanted the parties to discuss a potential jurisdictional defect and cited the case of Johnson v. Columbia Properties. Is that correct, Your Honors? Yes, we don't have the citizenship of Boston Springs Trust or ACS. Right. And based on the potential jurisdictional defect, we submit, I submit that the Federal District Court did not have subject matter jurisdiction in this case because there's nothing in the record to identify the citizenship of the members of the trust. And as stated and held in the Johnson case, an unincorporated entity like a trust, the citizenship of the members needs to be shown or proven the burden going to Bank of America who filed the lawsuit in Federal District Court based on subject matter jurisdiction, diversity of jurisdiction. And as is notated in the by the U.S. Supreme Court in the ArmaCode Realty Trust, a realty trust, the members, the citizenship of the members need to be identified and proven by the party that filed the action in the Federal District Court. Because jurisdiction of the federal courts, of course, is limited. The presumption is against federal jurisdiction and the party invoking federal jurisdiction needs to prove that diversity has been met. We submit that diversity has not been met in this case, Your Honor. What's your relief that you're seeking? What do we do here? The relief that we're seeking is similar to the AmeriCode case and Circuit's decision of vacating the judgment based on the underlying fact that the Federal District Court did not have jurisdiction to begin with. Are you going to give the plaintiff the opportunity to re-plead this or what are you going to do, just get rid of it entirely? Well, I assume that's on the plaintiff and Bank of America could file a new lawsuit in federal court and plead jurisdiction and the diversity of jurisdiction or file it or file the action in state court. And that's really up to Bank of America. So my understanding is that either we or the District Court could take additional evidence to determine jurisdiction even though it was not in the complaint. Is that incorrect? That's correct. And at this juncture, I submit respectfully that there is nothing in the record as to the citizenship of the members of the trust. And so based on the record, respectfully, we request that the judgment of the District Court be vacated. So the judgment be vacated. I'm sorry, go ahead, Judge Wynn. I just want to clarify, Mr. Hall, you're asking that we vacate and remand for dismissal for lack of diversity of jurisdiction? That's correct, Your Honor. Exactly how the 10th Circuit Court ruled in the AmeriCode Realty Trust case, which was affirmed by the U.S. Supreme Court. But I thought I heard you say we could also remand for the District Court to take additional evidence on jurisdiction. Well, well, I suppose this court can do whatever it pleases. But at this juncture, because there's nothing in the record, I submit that it would just be appropriate it would be more prudent at this juncture just to vacate and vacate the judgment and dismiss the case. Because, again, the underlying jurisdiction, diversity of jurisdiction was never satisfied or met by Bank of America in this case in filing in federal district court. Let me ask you a question on another issue. Given the position that you took, your client took below in this case, was there any way for Bank of America to ascertain what the super priority amount would be? Well, absolutely, Your Honor. In this case, the bank could have asked the trustee for the ledger for the super priority amount or could have just frankly paid the amount as indicated on the notice of default. And that goes back to the underlying original seminal SFR case with the Nevada Supreme Court held that that's what the bank could have done. They could have just paid the amount as indicated on the notice of default and claimed a refund or sought a refund for whatever. But if they didn't want to, if they didn't want to pay the entire amount, if they didn't want to pay above and beyond the super priority amount, and they only wanted the super priority amount, how could they determine that? What records? Yes, Your Honor, by asking the HOA trustee, in this case, Absolute Collection Services. The district court made a finding, in fact, I thought that ACS said it wouldn't send a statement of account until after the bank foreclosed on the first deed of trust. Was that clearly erroneous? Well, that's not erroneous. But the second part of that, Your Honor, is in all of these cases with a payment of, I believe, a nominal amount of $50 or $100, the ledger would have been provided. And where is that in the record? That's in the letter. I'm going to it right now. I apologize, Your Honor. That's in the letter from Absolute Collection Services to Miles Bauer. I thought ACS took the position that they're not going to identify the super priority portion of the lien unless Bank of America foreclosed first. Or upon foreclosure, then they would provide the super priority portion of the entire lien. No. Their position, Your Honor, their position via the letter, and that's excerpt 120, was that, yes, their position was that the super priority did not extinguish, that they believe did not extinguish the first deed of trust. However, per the letter, it says a statement of account costs $50. So with the payment of the $50, the statement of account would have been provided to the bank through Miles Bauer, and that would be the ledger, and that's how Miles Bauer could easily figure what the nine months would have been by multiplying the monthly assessments times nine. It says any statement of account from us will show the entire amount owed. So it doesn't indicate that the statement of account would show the super priority portion. Is there anything in the letter indicating that they could determine the super priority portion from the statement of account? Well, the statement of account, Your Honor, would basically show that it would be a ledger. It would be a ledger identifying all the months of delinquency, late fees, and whatnot. That's the statement of account. So you're saying they could have gone through the ledger and then calculated the nine-month portion? Absolutely, and that's what Miles Bauer did in 99% of these cases, whether it was through Absolute Collections or another HOA trustee. They would get the statement of account, which would be a running ledger, and they would calculate the nine months by multiplying each monthly assessment, which is always the same, times nine. And they would deduct out, they wouldn't factor in the late fees or whatnot. So to answer Your Honor's question, yeah, absolutely. They could have figured out and deciphered what the nine months would have been. So the district court also found that ACS would not accept a tender. Was that factual finding erroneous? That was erroneous, Your Honor, because the deposition testimony of Kelly Mitchell for ACS absolutely unequivocally stated that any and all payments would be accepted so long as the check did not notate that it was payment in full. Right, but the Nevada Supreme Court has said that the bank is entitled to put a condition that it's entitled to ask for on the check. So it was rejecting a conditional check that the Nevada Supreme Court said was acceptable. Right, right. Okay, so you agree with that? Right, but the difference is, Your Honor, that Nevada Supreme Court case when we talk about, that's Diamond Spur, when we talk about that they can put the condition in the cover letter, that never occurred in this case nor any cases involving excused tender. There was no cover letter. It just started with a letter from Miles Bauer and a responsive letter. And I do have to point out in this case was relied on the Jessup case, which was reconsidered. The district court did not have the benefit of the Perla case that came after the published opinion. And in Perla, the Nevada Supreme Court absolutely held there has to be a known policy of rejection. Okay, you're actually over time, but we'll give you a minute for rebuttal. Okay, thank you, Your Honor. Mr. Parsley. Thank you, Your Honor. The first matter I'll get to is the jurisdiction. And I need to note that in the district court record, there is an affidavit filed by Bank of America, along with a motion to serve Boston Springs Trust by publication, that sets out how Bank of America made a diligent search to determine who the trustees of the trust are. Bank of America diligently searched for them and could not determine their identity. Boston Springs Trust gave only an affidavit, gave only a PO box as its address. And we've searched the Secretary of State's website for Nevada and Delaware and neither they nor any other public source says who the trustee is. And I'll further note that Boston Springs Trust filed a Certificate of Interested Parties in both the district court and in this court that claimed no trustee, no person at all holding an interest in the trust. I don't know what to make of that exactly, except that they've been withholding the identity of their trustee. And I'll further note that in the complaint, Bank of America alleged that based on what we know, the trust is a Nevada trust and Boston Springs Trust admitted that allegation and followed the answer and did not dispute the diversity jurisdiction. There's a case this court issued in 1981, and I apologize for my French pronunciation, but it's called Societe de Conditionement in Aluminum and it's 655 F. 2nd. 938. And there this court said it is appropriate for a court of appeals to examine a record to determine if the evidence is sufficient to establish a prima facie showing of jurisdictional facts. In that case, this court reversed the district judge's order dismissing on the basis of subject matter and found that the plaintiff had made a prima facie showing and there should be fact finding on jurisdiction if there are any questions about that. And as applied here where Boston Springs Trust did not dispute diversity and has never given us any way to determine the identity of its trustee, it would be entirely inappropriate to just dismiss the case. At the very most, there should be a limited amount of fact finding and discovery to determine their identity. But actually, I think based on their representations and the answer, there is enough to say that we made a prima facie showing. They've never introduced any contrary evidence that would defeat diversity jurisdiction here. And fundamentally, we need the ability to litigate quiet title claims against the record title holder. If Boston Springs Trust is going to withhold its trustees identity and tell us it's a Nevada trust and then wait till oral argument to ask to dismiss the entire thing, that's grossly overreaching, Your Honors. I'll move now to the issue of this request that Bank of America sent to determine the super priority amount. Our understanding is that what ACS was willing to send back was a statement showing the full amount due, a full payoff demand. There's nothing to support Mr. Hong's contentions that what they would have sent back was something showing the assessment rate or super priority amount. And Judge Boulware found at his hearing that ACS would not send a statement of account until after the foreclosure on the deed of trust had proceeded. I have a question. Did Boston Springs Trust send your client a letter saying if you pay $50, we'll let you know about this? He was saying that that was clear in the record. ACS's response in the record says that they would give a payoff demand for $50. And that's correct. But what we were seeking to pay was only the super priority amount. What they were wanting us to pay was the entire amount of the lien, which was exponentially larger in most cases than just the super priority amount. So counsel is representing that for $50, you would get a ledger that basically sets out the monthly amounts. And if I understand his argument correctly, based on that, you could calculate the super priority amount. Is that correct? It's not our understanding that they would have sent that sort of document, Your Honor. And when we asked for the super priority statement of account, they wouldn't give it to us. And Boston Springs Trust counsel didn't dispute that they were unwilling to send the super priority statement of account. It's really it's really not making much sense that ACS was willing to produce that, but then said they wouldn't give us a statement of account for the super priority. I don't know how we can reconcile those two positions. And I think based on what's in the record, the undisputed facts show that they were not willing to provide the necessary statement of account to Bank of America. And that's consistent with their policy of rejecting super priority checks, which we've discussed a little bit so far. But Kelly Mitchell's testimony is very clear that she was the principal of ACS, that Miles Bauer's checks typically included the phrase paid in full. And she wouldn't accept any check from Miles Bauer that said paid in full because she thought this was a condition that concerned her. And she would respond to Miles Bauer and tell them to take the phrase off. However, the Nevada Supreme Court held in the Diamond Spur case that that was an acceptable condition to include. So what we know here is that ACS had made this policy known to Bank of America at some point. And Miles Bauer continued to try to send checks that said paid in full, but only with a cover letter. And you can see it in the first letter in this case, actually, that was sent by Miles Bauer, saying that Miles Bauer was attempting to pay the bank's obligations as a first deed of trust holder, namely the nine months of assessments preceding the notice of delinquent assessment. And so from that, it's clear ACS knew we wanted to pay the super priority amount and wouldn't take those checks. And even if their position is just that condition was a problem, that's not enough to make an acceptable policy under binding Nevada law. Well, didn't she also say that she would take a check as long as there are no conditions written on the check? That's correct, Your Honor. But Bank of America had the right to send these checks stating that it had paid in full, in large part to preserve a record because ACS was taking the position that the super priority amount didn't even exist until the first deed of trust had been foreclosed upon. I believe Mr. Hong admitted that in his opening statement. And Bank of America wanted to preserve a record saying that it was sending an amount to pay the super priority portion to preserve the first deed of trust. And it was entirely entitled to do that. And Nevada law has recognized in Pearl of Trust that a known policy of rejecting tender is sufficient to excuse the obligation to make a formal tender. And all the evidence here shows that there was such a policy and it had been made known at some point by ACS to Miles Bauer on behalf of Bank of America. The district court relied on Jessup, which was the best opinion it had at that time. But it might as well have tracked Pearl of Trust because of how closely it fits the elements that the Nevada Supreme Court gave in Pearl of Trust. And counsel said in briefing that the rule in Pearl of Trust is somehow more narrow than the rule in the first Jessup opinion. And reading those opinions just does not bear that out. The Nevada Supreme Court has stuck with that same rule, even though in Jessup it ultimately changed the outcome based on evidentiary findings made by the trial court about a policy. So the rule remains the same. Evidentiary findings were based on the same record that's present in this case, right? The same or very similar letters present in this case. The letter was the same, but the testimony was pretty different. And in that case, Kelly Mitchell gave a separate set of trial testimony that contains some conflicting statements. And to be honest, I don't want to speculate exactly what the Nevada Supreme Court thought was the significant testimony because the opinion doesn't say that. Which parts they thought supported the findings. But here, reading the only deposition testimony we have in the record, Kelly Mitchell is very clear. And you have to make a case-by-case finding based on the record here. And in this case, the record supports Judge Bowyer's decision, applying the Exclusive Tender Doctrine. So for that reason, Your Honors, I ask you to affirm the judgment below. Okay. Mr. Hong, we'll give you a minute for rebuttal. Thank you, Your Honor. First of all, to be very clear, Perla Trust factually was completely different than Jessup. Perla Trust did not involve ACS. Perla Trust involved NAS, Nevada Association Services. And Perla Trust was evidence-specific, where there was testimony from Susan Moses of NAS, Chris Yergeson of NAS, identifying their policy of rejecting tenders. Jessup dealt exactly with this same fact pattern with ACS and these exact same letters, Your Honor. And that was, we all know, was reconsidered and vacated. So Judge Bowyer, unfortunately, at that time, only had Jessup and used Jessup to make his decision. Perla is a completely different set of facts and it's a different standard. And under Perla, a known policy of rejection must be shown. I also want to point out, on the excerpt from Record 120, the statement of account absolutely would have shown the super priority amount. I'm reading here in the letter, at that time, this is after a foreclosure, we will provide a nine-month super priority lien statement of account. And then in the bottom, it says, this statement of account will cost $50. So if the bank would have paid $50, it would have absolutely received a ledger, a statement of account that identified the super priority lien amount. So there's no question the bank would have received, would have been able to decipher what the nine months would have been. Also, on the jurisdictional aspect, Your Honor, this court in the DeMars versus HSBC bank case held that jurisdiction, that the challenge to jurisdiction can be raised anytime, anytime in the case. And it was the bank's choice, Bank of America, to sue the trust as the trust and not the trustee. If the trustee would have been sued, that would have been different. I think we have your honor. Thank you. Thank you, Your Honor. Yes, the case of Bank of America versus 9060 Boston Springs Trust is submitted.
judges: Siler, Ikuta, Nguyen